# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,   :  Case No. 3:08-cr-054

 - vs -          District Judge Walter Herbert Rice
              Magistrate Judge Michael R. Merz
LARRY EVANS,

    Defendant.   :

## REPORT AND RECOMMENDATIONS

   This case is before the Court on Defendant's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 (Doc. No. 29). On the Court's Order, the United States filed an Answer (Doc. No. 33) and Defendant filed a Reply (Doc. No. 35). Because the Motion included claims which required an evidentiary hearing, the Court appointed counsel for the Defendant and conducted an evidentiary hearing which has been transcribed. The parties have filed post-hearing memoranda (Doc. Nos. 46 & 47) and the Motion is ripe for decision.

   Defendant was indicted on one count of possession of counterfeit securities of an organization in April, 2008, and pled guilty to that charge in October, 2008. He was represented throughout the trial court proceedings by Assistant Federal Public Defender Cheryll Bennett. After plea he was referred for a pre-sentence investigation during which he acknowledged the truth of the statement of facts attached to the Plea Agreement. That statement showed Defendant had successfully cashed five counterfeit payroll checks from a non-existent entity, Harper Medical

1

Center, and attempted to cash a sixth, resulting in a loss to the Huntington National Bank of $5,336.80.

The PSI[1] reveals that Defendant is fifty-five years old and was first convicted of a theft offense at age twenty-two, amassing nineteen theft convictions thereafter prior to the instant case. The offense of conviction in this case carries a maximum sentence of ten years; the advisory guideline range was calculated at twelve to eighteen months. On February 12, 2009. Defendant was sentenced to fifty-four months confinement. He took no appeal, but filed the instant Motion a year later on February 1, 2010.

Defendant raises one ground for relief: Petitioner's counsel's performance was ineffective for failure to appeal the Court's decision to unreasonably sentence.

At the initial sentencing hearing, Judge Rice elaborated on the reasons for imposing a sentence in excess of the advisory guideline range: Defendant's long criminal history, the existence of four outstanding warrants for his arrest, his use of multiple false identities, etc. (Transcript, 1/23/2009). Petitioner acknowledges Judge Rice announced his intention to impose a sentence of sixty months, but allowed Defendant another hearing to attempt to persuade him to impose a lesser sentence. Defendant's counsel filed a sentencing memorandum in which it was acknowledged that "a sentence less than the 60 months the Court indicated it was inclined to impose would be sufficient and not greater than necessary to satisfy the purpose of sentencing." (Doc. No. 20 at 1.) Another hearing was held, and Judge Rice imposed the 54-month sentence now complained of.

In his *pro se* Memorandum in Support of his Motion, Defendant acknowledges several Sixth

---

[1] At Defendant's request, the Magistrate Judge has taken judicial notice of the contents of the Presentence Investigation Report (Transcript of Evidentiary Hearing, June 22, 2010, at 6.)

Circuit cases in which sentences substantially over the sentencing guideline range were upheld, but argues his sentence was unreasonable, that he asked Ms. Bennett to appeal it, that she agreed to do so, but never did.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Failure to file a notice of appeal on request is ineffective assistance without any showing of prejudice. *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998); *United States v. Peak*, 992 F.2d 39 (4th Cir. 1993); *United States v. Tajeddini*, 945 F.2d 458 (1st Cir. 1991); *Estes v. United States,* 883 F.2d 645 (8th Cir. 1989); *Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992); *Abels v. Kaiser*, 913 F.2d 821 (10th Cir. 1990). The Sixth Circuit also held "We emphasize, of course, that a defendant's actual "request" is still a crucial element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal. Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request." *Ludwig*, 162 F.3d at 459. In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the Court rejected a *per se* rule which would require an attorney to file a notice of appeal regardless of whether the client asks. The Court held counsel must consult with the client about the advantages and disadvantages of taking an appeal when there is reason to think that a rational defendant would want to appeal or this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

By claiming Ms. Bennett provided him with ineffective assistance, Mr. Evans waived the attorney-client privilege for all communications with her relating to that subject. A claim of ineffective assistance of counsel impliedly waives the privilege as to any attorney-client communications relevant to any such claim. *In re Lott*, 424 F.3d 446 (6th Cir. 2005); *Tasby v. United*

4

*States*, 504 F.2d 332 (8th Cir. 1974); *Randall v. United States,* 314 F.2d 800 (10th Cir. 1963); *United States v. Ballard*, 779 F.2d 287 (5th Cir. 1986); *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1967); *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir. 1986). However, implied waivers are to be narrowly construed, *Lott, citing Bittaker v. Woodford,* 331 F.3d 715 (9th Cir. 2003).

Given the waiver, the United States obtained from Ms. Bennett an Affidavit on the relevant conversations (Government Exhibit 1). Therein she avers that, at Mr. Evans' request, Judge Rice referred him to Dr. Massimo De Marchis, Psy. D., for a psychological evaluation after sentencing. *Id.* at ¶ 3. A week later Mr. Evans left a telephone message for Ms. Bennett, inquiring about the evaluation, but did not request she file a notice of appeal. *Id.* at ¶ 5. In a letter a month later, he gain inquired about the evaluation, but not about any appeal. *Id.* at ¶ 6. The first time he raised a request about appeal was on October 28, 2009. *Id.* at ¶ 8. Finally, she avers it is her established practice to file a notice of appeal on request within the time allowed by law, regardless of whether she believes an appeal would have merit. *Id.* at ¶ 10. Ms. Bennett does not aver that she raised the topic of appeal with Mr. Evans.

Ms. Bennett was called as a witness by the Defendant at the evidentiary hearing. She confirmed that Judge Rice had told Mr. Evans about the mechanics of an appeal, including that it had to be filed within then days and that his appointed counsel would file a notice for him if her requested it (Evid. Hrg. Tr. at 8-9). She testified she explained the right to appeal to Mr. Evans before his sentencing, but not after. *Id.* at 11-12. She did not discuss with him whether there were any meritorious grounds for appeal or the probable results of an appeal. *Id.* at 12. She did not explain to him the advantages or disadvantages of taking an appeal. *Id.* at 13. When discussing with him the judge's stated intention to impose a sentence of sixty months, he did not indicate to her any intention

of appealing even that sentence. *Id.* at 13. However, after sentencing she does not remember asking him if he disagreed with the sentence and wanted to appeal, although the first time he told her that was eight months after sentencing. *Id.* at 22. He had not made any indications any time during her representation of him that he wanted to appeal. *Id.* at 26.

On examination by Government counsel, Ms. Bennett indicated she had told Mr. Evans in the time leading up to his plea that she was concerned about how extensive a criminal history he had and how that might lead to a sentence outside the Sentencing Guideline range. *Id.* at 36-38. Even after Judge Rice expressed his intention to impose a 60-month sentence, Mr. Evans did not express any concern. *Id.* at 42. The substance of his position seems to have been that he did not understand why he kept committing offenses (this was the reason for the requested evaluation$^2$), that he was at a crossroads of his life and wanted to turn things around. *Id.* at 42. She had told him of her plans to argue for something less than the sixty months and he had said he was ready to accept whatever the judge does. *Id.* at 45.

Defendant also testified at the evidentiary hearing. He claimed that he asked Ms. Bennett to file a notice of appeal while they were still in the courtroom, immediately after sentencing. *Id.* at 104. He admits that the next time he raised the question of appeal was when he spoke to Ms. Bennett in October, 2008, confirming inferentially that he did not raise the issue with her at any other time after the sentencing hearing but before the ten-day appeal period expired. *Id.* He admitted discussing with her a strategy to change Judge Rice's mind to a period less than sixty months, but that she was unable to verify a number of the facts that he was relying on. *Id.* at 107. Part of what Ms. Bennett was trying to do was to verify Mr. Evans' statements because Judge Rice had indicated

---

$^2$The evaluation did not involve any question of Mr. Evans' competency.

a low opinion of Defendant's credibility. *Id.* at 109. Mr. Evans admitted he did not mention his desire to appeal during the two contacts he made with Ms. Bennett during the ten-day appeal period. *Id.* at 115.

Ms. Bennett's administrative assistant, Rebecca McDowell, was called as a Government witness and confirmed that she had no request from Mr. Evans or from Ms. Bennett to file a notice of appeal and that doing so is a simple task requiring very little time.

## Analysis

The key precedent in deciding this case is *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). There the Supreme Court reversed a holding by the Ninth Circuit which required a defense attorney to file a notice of appeal unless he or she had received the client's consent not to appeal. The Court instead held that counsel had a constitutionally-imposed duty to consult with a defendant about an appeal, when there was reason to think either that a rational defendant would want to appeal, or that the particular defendant reasonably demonstrated to counsel that he was interested in appealing. The Court reaffirmed both ends of the spectrum of professional conduct regarding notices of appeal: on the one hand, an attorney cannot ignore an explicit request to file an appeal. *Id.* at 477, *citing Rodriquez v. United States*, 395 U.S. 327 (1969). On the other hand, a defendant who expressly instructs that no appeal be filed cannot later complain it was ineffective assistance to fail to do so. *Id. citing Jones v. Barnes,* 463 U.S. 745, 751 (1983). The Court found that Roe's case fell between those two poles. The Court opined:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question

whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning -- advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. See supra, at 5-6. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Because the decision to appeal rests with the defendant, we agree with JUSTICE SOUTER that the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal. See ABA Standards for Criminal Justice, Defense Function § 4-8.2(a) (3d. ed. 1993); post, at 3-4.

In fact, California imposes on trial counsel a per se duty to consult with defendants about the possibility of an appeal. See Cal. Penal Code Ann. § 1240.1(a) (West Supp. 2000). Nonetheless, "prevailing norms of practice as reflected in American Bar Association standards and the like . . . are only guides," and imposing "specific guidelines" on counsel is "not appropriate." *Strickland*, supra, at 688. And, while States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented, we have held that the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices. See *Strickland*, 466 U.S. at 688. We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. See 466 U.S. at 689 (rejecting mechanistic rules governing what counsel must do). For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in

> appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," 466 U.S. at 691, as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

*Id.* at 477-480.

The Magistrate Judge concludes Mr. Evans is lying when he says he instructed Ms. Bennett to appeal. In reaching that conclusion, the Magistrate Judge relies upon the following facts. First of all, Mr. Evans has an extraordinary record of felony convictions for offenses involving dishonesty, including the use of many aliases and false Social Security numbers. Secondly, his assertion is inconsistent with his statement in open court when the probability of a 60-month sentence was announced that he was willing to accept whatever the judge gave him. Third, Ms. Bennett testified unequivocally that the request did not happen. Fourth, Mr. Evans admits he did not raise the appeal in either contact he made with Ms. Bennett during the ten-day appeal period. Fifth, Ms. McDowell confirmed Ms. Bennett's testimony, showing from office records the absence of any notation that Mr. Evans wanted to appeal. Thus this is not a case where counsel ignored a direct request to appeal.

Ms. Bennett and Mr. Evans confirm, on the other hand, that they did not consult about the advisability of an appeal after sentence but before the appeal period expired. As *Flores-Ortega* holds, there is no *per se* obligation for such a consultation.

The question, then, is whether Ms. Bennett's failure to consult was constitutionally deficient

9

performance[3]. The Magistrate Judge concludes that Ms. Bennett's performance was not constitutionally deficient; indeed, it fits comfortably within one of the examples given by Justice O'Connor in the immediately preceding quotation. Mr. Evans had pled guilty and apparently did not receive any charge concessions from the United States for doing so: the Indictment contained only one count. There is no suggestion that his plea was induced by a prediction from Ms. Bennett that the sentence would be substantially less than he received. Although the sentence is well above the advisory guidelines range, Ms. Bennett had warned Mr. Evans before he pleaded that it might be. Even after Judge Rice announced an intention to impose a five-year sentence, there is no indication of any desire by Mr. Evans to withdraw his plea. Instead, he expressed in open court his willingness to accept "whatever the judge gives me." There is also no question that Judge Rice advised Mr. Evans of his appeal rights and the mechanics for obtaining an appeal.

Of course, Mr. Greger's cross-examination of Ms. Bennett was a textbook-perfect questioning under the relevant American Bar Association Defense Function Guidelines. But those Guidelines are not, as *Flores-Ortega* holds, constitutionally binding.

Even though a defendant need not prove prejudice under these circumstances, the absence of prejudice can inform the determination of whether a rational defendant would have wanted to appeal. A relevant circumstance, as the Court notes, is that Defendant pled guilty and nothing suggested to the Magistrate Judge in this proceeding even purports to undercut Judge Rice's finding that the plea was knowing, intelligent, and voluntary. The only conceivable issue for appeal suggested by the record is that the sentence was unreasonable. However, Defendant has cited no

---

[3]*Flores-Ortega* confirms that, once constitutionally deficient performance on filing an appeal is shown, prejudice is presumed since a defendant has been deprived of an entire stage of judicial proceedings.

authority to the Magistrate Judge suggesting the Court of Appeals would have been likely to find a 54-month sentence unreasonable in this case.

In a certain sense, a "rational" defendant in Mr. Evans' position has nothing to lose by appealing. Because he is indigent, it costs him nothing financially to appeal. Because he pled as charged, he would not face reinstatement of a broader indictment.[4] If the Court of Appeals found the sentence unreasonable, it could only be reduced on remand.

On the other hand, there is a serious psychological cost of appealing. If Mr. Evans was sincere when he told the Court that he was a changed man and would accept whatever sentence he was given, appealing would remove finality. According to Ms. Bennett's account of what happened throughout the course of her representation, Mr. Evans very much wanted to turn his life around. It was for that reason that he requested a post-sentencing psychological evaluation to try to gain some insight into why he continued to offend (presumably in addition to the admitted life-long need to steal to support his addictions).

## Conclusion

Defendant has not proved that his trial attorney either (1) ignored an express instruction to appeal or (2) unconstitutionally failed to consult with him about the advantages and disadvantages of appeal. Therefore his sole ground for relief is without merit and should be dismissed with

---

[4]In the Plea Agreement, the Government promises not to bring other charges against Mr. Evans arising out of the same course of conduct. The Magistrate Judge is unaware whether there were other possible charges on which the Government had gathered evidence which could have been brought.

prejudice. The Magistrate Judge's evaluation of trial counsel's conduct is one about which reasonable jurists could disagree. Therefore, Mr. Evans should be permitted to appeal *in forma pauperis* and the Court should issue a certificate of appealability.

November 6, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).